## J. I. Case Plow Works v. Isaac C. Edwards, Assignee.

1.   VOLUNTARY ASSIGNMENTS — *Liability of the Assignee.*—If an assignee has acted with good faith, exercised fair discretion, and dealt in the same manner he would ordinarily do in regard to his own property, and has managed the trust property with reasonable diligence, he ought not to be subject to losses occurring in the management of the property, or be made responsible for a mistake in judgment.

2.   SAME--*An Assignee Held Not Liable for Losses.*—The court is of the opinion that the evidence in this case furnishes no basis for impeaching the acts of the assignee for fraud or bad faith, and finds that he has exercised fair discretion, and has acted in the same way that an ordinary person would do in regard to his own property; that in all things in relation to the trust property he has used reasonable diligence, and that he ought not to be held responsible for losses occurring in the management of such property.

3. Same—*Assignees Should Defend Against Suits.*—It is the duty of an assignee to defend the property of the estate in case any suit is brought respecting it, whether such property be real or personal, and to give notice of such suit to his *cestui que trust*, if it may be useful and practicable.

4. Same—*When Assignee Should be Charged with Interest.*—If an assignee makes interest on the funds in his hands, he should be chargeable with the payment of interest, but the evidence should affirmatively show the amount with which he is to be charged, or the time for which he is liable ought to appear, to furnish a proper basis for computation.

5. Same—*An Assignee Held Not Personally Liable for the Costs of a Suit.*—The order against appellee for costs is uncertain, and should be modified so as to direct the costs to be paid from funds in his hands as assignee, as no reason is perceived why he should be adjudged to pay the costs personally.

**Assignment Proceedings.**—Appeal from the County Court of Peoria County; the Hon. Colostin D. Myers, Judge, presiding. Heard in this court at the May term, 1897. Affirmed in part, reversed in part, and remanded with directions. Opinion filed September 20, 1897.

Jack & Tichenor, attorneys for appellant.

George B. Foster, attorney for appellee; David E. Powell, of counsel.

Mr. Justice Wright delivered the opinion of the Court.

Kirkwood, Miller & Co., engaged in a general implement and farm machinery business at Peoria, being in failing circumstances, on the 31st day of December, 1892, made an assignment to the appellee under the provisions of the act concerning voluntary assignments for the benefit of creditors. The business of the insolvents included a branch establishment at Cedar Rapids, Iowa, also embraced in the assignment. The business of this firm had been extensive, attended with much detail, and the property comprised numerous and distinct varieties of implements and articles of trade, in the aggregate amounting to many thousands of dollars, and out of which grew several complications and consequent litigation, by reason of the claims of other parties to a part of the property supposed to belong to the insolvents. Appellee accepted the assignment, and entered

upon the execution of the trust imposed upon him, as provided by law, and in pursuance thereof filed with the clerk of the County Court, as he then understood it, a true and full inventory and valuation of said estate under oath, so far as the same had come to his knowledge.   In consequence of the variety of the property and magnitude of the business involved, from necessity and in conformity to the common usages the assignee employed several persons, including one or more of the old employes of the insolvents, to assist him in obtaining the necessary information to prepare and file the inventory required of him as such assignee.   These persons so employed made the invoices and valuations of the property supposed to be on hand from which the final inventory was made and filed.   Several suits at law were commenced in Iowa, where a part of the property was located, involving the right of the assignee to the same. Appellee, with the advice and consent of a number of the creditors of the assignors, employed attorneys in that State to protect the interests of the estate in the property in litigation.   It was required also that the assignee as soon as practicable convert the assets of the insolvents into money, that it might be distributed to the creditors, and for that, as well as other necessary purposes, as the care and management of the property, he retained in his service several of the clerks and salesmen, who previous to the assignment had been in the employment of the assignors.   The care, management and disposition of property of this nature, located as it was, would naturally be attended with expense. From necessity and common usage, the assignee must act by other hands than his own.   The same duties devolved upon the assignee with respect to the estate, as would be required of any other trustee.   The same elementary rules of equity applicable to other trustees, would also govern the conduct of the assignee, and it therefore is pertinent to inquire concerning them, and apply them justly to the facts presented.

By reference to Story's Eq. Jur., Vol. 2, Sec. 1269, it is said: "In respect to the preservation and care of trust

property, it has been said that a trustee is to keep it, as he keeps his own.   *   *   *   The rule, in all cases of this sort, is, that when a trustee acts by other hands, either from necessity or conformably to the common usage of mankind, he is not to be made answerable for losses." Sec. 1271: " It has been remarked by Lord Hardwicke, that these rules should not be laid down with strictness to strike terror into mankind acting for the benefit of others, and not for their own; and that, as a trust is an office necessary in the concerns between man and man, and which, if faithfully discharged, is attended with no small degree of trouble and anxiety, it is an act of great kindness in any one to accept it. To add hazard or risk to that trouble, and to subject a trustee to loss, which he could not foresee, and consequently not prevent, would be a manifest hardship, and would be deterring every one from accepting so necessary an office." Sec. 1272: " But it would be difficult to affirm that the rules of the courts of equity have always proceeded upon so broad and liberal a basis.   The true result of the considerations here suggested would seem to be that where a trustee has acted with good faith, in the exercise of fair discretion, and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for losses occurring in the management of the trust property." Sec. 1275 : " In relation to trust property, it is the duty of the trustee, whether it be real estate, or personal estate, to defend the title at law in case of any suit being brought respecting it; to give notice, if it may be useful and practicable, of said suit, to his *cestui que trust:*   *   *   *   Finally, he is to act in relation to the trust property, with reasonable diligence." Sec. 1277: " In regard to interest upon trust funds, the general rule is that if he has made interest upon those funds, or ought to have invested them so as to yield interest, he shall in each case be chargeable with the payment of interest."

From what we have quoted from the learned commentator, it may be deduced that the correct rule is that if the assignee has acted with good faith, in the exercise of fair

discretion, and in the same manner as he would ordinarily do in regard to his own property, and has acted with relation to the trust property with reasonable diligence, he ought not to be subject to losses occurring in the management of the property, or be made responsible for a mistake in judgment. Applying these plain and just rules to the case presented will, it is believed, result in a proper conclusion.

Appellee filed his report in the County Court, to which appellant and other creditors of the insolvents objected. On the hearing the court sustained the same to the extent of adding $9,349.70 to the balance reported by the assignee, and otherwise the objections were overruled. Appellant prayed and perfected this appeal and assigns for error the overruling of a part of its objections, and appellee has assigned cross-errors calling in question the action of the court whereby the items composing the $9,349.70 were added to such balance. As to the objections that were by the court overruled, we do not think an extended discussion would subserve any good purpose. We have carefully examined the evidence and feel warranted in the conclusion the court decided correctly as to all those matters. In support of its objections appellant charges appellee with carelessness, bad faith and fraud in the management and disposition of the property and funds confided to him, especially in the employment and payment for the services of Mills & Keeler, attorneys in the Iowa litigation, and the retention in his service and payment therefor of Stewart and Henning and other old employes of the insolvents; and also in the sales and disposition of certain of the assets of the estate. After a full and careful examination of the evidence contained in the very voluminous abstract, and a faithful consideration of the extended briefs and arguments of the counsel of the parties, we find no basis for impeaching the acts of the assignee for fraud or bad faith; and we also find in those respects of which complaint is made, he has exercised fair discretion, and has acted in the same way an ordinary person would do in regard to his own property, and that in all things in relation to the trust property, he has acted

with reasonable diligence, and therefore he ought not to be held responsible for losses occurring in such management. It has already been seen that it was the duty of the assignee, whether it be real estate or personal estate, to defend the title at law in case any suit be brought respecting it, and to give notice, if it may be useful and practicable, of such suit to his *cestui que trust.*

It may be admitted the assignee in his management of the property has done and left undone things that from a retrospective standpoint, ought to have been omitted, or performed differently, still, the just way is to view his acts prospectively; for in that manner only can it be properly determined what a reasonable person would do under given circumstances. Applying this test, no difficulty should be experienced in sustaining the acts of the assignee on honest grounds.

The court sustained objections to items of $870 and $243.15, being parts of the salaries of Stewart and Henning, respectively, they being two of the employes of the insolvents retained in the service of the assignee, and to $490.54, part of the attorney fees paid to Mills & Keeler. We think these items were proper credits in the account of the assignee, and it was error to reject them.

It has been seen that much of the work necessary to be performed by the assignee was proper to be done by the hands of others. In the exercise of fair discretion, the appellee employed other persons to make the inventory filed by him. On the hearing A. H. Harris, the secretary of the appellant, was permitted to testify as to the manner in which he had compared "Exhibits A and B," which were admitted in evidence, showing an apparent shortage in the account of appellee of $5,257.30, one-half of which the court charged against the assignee. This alleged shortage was made to appear by a comparison of the reports and inventory, and from other information obtained by Harris in different ways, and as an instrument of evidence in the case is, in our judgment, without value. It is merely the opinion of Harris based on his own conclusions and hearsay evidence. It is

clear from the testimony that the inventory, made by the persons employed for that purpose, contained the description and valuation of many articles not on hand at the time of the assignment. This discrepancy arose in part, by accepting marks and tags on packages as evidencing the correct description and number of the articles, when in fact the property, or large portions of it, had been disposed of before the assignment. Again, many of the implements were in a condition known as " knocked down;" that is, the parts were separated, stored in different places in the building, and in that way much of the property became duplicated on the inventory. The assignee declared on oath that he had sold all the goods that came to his hands, and had accounted for them as either sold or on hand, and we think, in view of all the evidence, his statement is uncontradicted by competent evidence.

The action of the court, therefore, by which the assignee was charged with $2,628.85, as shortage, was unwarranted and erroneous.

We do not find sufficient evidence in the record upon which to charge the assignee with the interest item of $2,434.18. If he has made interest upon the funds in his hands, he should be chargeable for the payment of interest, but the evidence should affirmatively show the amount with which he is to be charged, or the time, for which he is liable ought to appear, to furnish a proper basis for computation. If the assignee made interest it would be easy to show the fact and charge him accordingly. The order against appellee for costs is uncertain. It should be modified so as to direct the costs to be paid from funds in his hands as assignee. No reason is perceived why he should be adjudged to pay the costs personally.

For the errors indicated the order of the County Court will be reversed on the cross-errors as to the specified items and costs, at the cost of the appellant; and in all other respects the order of the County Court will be affirmed and the cause remanded to that court with directions to allow in the account of the assignee credit for

all salaries paid to Stewart and Henning, and all the
attorney fees paid to Mills & Keeler, and to reject the
charge for alleged shortage, and to retry the case on the
interest item.

Order affirmed in part, reversed in part and cause
remanded with directions.